IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KELLY TAYLOR, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-10-1796 |
| DELMARVA POWER & LIGHT COMPANY, INC., | * | |
| | * | |
| Defendant. | | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

This employment discrimination action arises out of an Amended Complaint filed by Plaintiff Kelly Taylor ("Taylor" or "Plaintiff") against her former employers, Defendants Delmarva Power & Light Company, Inc. ("Delmarva") and Pepco Holdings, Inc. ("Pepco"). Taylor's original two count Complaint alleged disparate treatment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII") against Defendants.   On August 4, 2010, Defendant Pepco filed a Motion to Dismiss (ECF No. 9) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Subsequently, Taylor filed her First Amended Complaint (ECF No. 13) in which she clarified her allegations against Pepco. Nevertheless, on March 7, 2011, this Court granted Pepco's Motion to Dismiss and dismissed all counts against it with prejudice (ECF No. 28).

A period of discovery having been concluded, currently pending before this Court is Defendant Delmarva's Motion for Summary Judgment (ECF No. 38).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND

As the nonmoving party, the facts are viewed in the light most favorable to the plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiff Kelly Taylor ("Plaintiff" or "Taylor") is an African-American woman who resides in Wicomico County, Maryland. Pl.'s A. Compl. ¶ 3, ECF No. 13. On March 23, 2009, Taylor was hired as a temporary meter reader at Defendant Delmarva Power & Light Company, Inc. ("Delmarva"), an operating subsidiary of Pepco Holdings, Inc. ("Pepco"). *Id.* at ¶ 7. She was assigned to work at the Delmarva Power facility in Salisbury, Maryland. *Id.* Craig Brunner ("Brunner") was the supervisor of the Salisbury District Meter Readers. *Id.* at ¶ 8.

Taylor began her employment with Delmarva in training where she learned how to perform her responsibilities as a meter reader. Bennett Aff.[1] ¶ 11, ECF No. 38-5. Plaintiff claims that Delmarva company policy requires that training for the position take approximately six months.[2] Pl.'s A. Compl. ¶ 8. Defendant alleges that Taylor's two week training is consistent with Delmarva's practice. Bennett Aff. ¶ 11.

During the spring of 2009, the Millsboro District in Delaware sought assistance from the Salisbury District. Bennett Aff. ¶ 13. Millsboro Meter Reader Supervisor Glenden Irving Jackson ("Jackson") asked Brunner if a Salisbury meter reader could be temporarily assigned to the Millsboro District. *Id.* Brunner agreed and temporarily assigned Taylor to read meters in Millsboro. *Id.* According to Defendant, Taylor was selected because she was the most junior reader in Salisbury and her assignment would not disrupt the established schedule, as she had not

---

[1] Edward Bennett is the Manager of District Resources for the Salisbury District of Delmarva and has held this position since May 1, 2006. Bennett Aff. ¶ 1-2 (ECF No. 38-5). He is responsible for construction and the employees, including meter readers who fall within that area. *Id.*

[2] Taylor has not identified any specific Delmarva policy that requires that meter readers should receive more than two weeks of training. Taylor Dep. at 135-37 (ECF No. 38-4). In addition, Taylor acknowledges that she received proper training to read meters. *Id.* at 107.

yet been assigned permanent routes in Salisbury.[3]  *Id.* at ¶ 14.  Moreover, Taylor had not worked most of the Salisbury routes and, therefore, was unfamiliar with them.  Taylor Dep. at 159, ECF No. 38-4.

On April 13, 2009, Taylor began traveling to Delaware to read meters in the Millsboro District.  Burris Aff. at Ex. 1, ECF No. 38-7.  Taylor acknowledges that she was expected to work in the Millsboro area for most of the day, but was permitted to leave Millsboro early enough to arrive back to the Salisbury facility in time for the end of her regular shift at 3:30 p.m. Taylor Dep. at 152.

The chain of events that led to Taylor's termination began later that month.  According to Defendant, on Friday, April 17, 2009 and Monday, April 20, 2009,[4] Taylor arrived late for work. Burris Aff. at Ex.1.  Defendant alleges that Brunner counseled Taylor about Delmarva's tardiness policy after her second lateness and told her that she was expected to be on time each day.  Burris Aff. at Ex. 2.  On April 22, Brunner saw Taylor sitting in her company truck on the Sam's parking lot when she had been scheduled to be working in the Millsboro area.  Taylor Dep. at 174-77.  When Brunner confronted Taylor, she told him that she was taking her lunch and her break.  *Id.* Taylor acknowledges that Brunner advised her that she was not to work through her lunch and break, and that she was to leave Millsboro to arrive back in Salisbury near the end of her shift.  Taylor Dep. at 176.

---

[3] Defendant asserts that the Salisbury District had developed a schedule that assigned all Salisbury meter readers to specific routes.  Def.'s Mot. for Summ. J. at 4, ECF No. 38.  According to Defendant, Taylor was not assigned a specific route and was hired to assist as needed.  *Id.*

[4] Taylor alleges that she was not late to work on April 20, 2009 and that she arrived at the same time as Jacob Wilkins, a white temporary meter reader, for the morning daily meeting.  Pl.'s Opp. to Def.'s Mot. for Summ. J. at 9, ECF No. 39.  She also alleges that she was the only one pulled aside by Brunner for alleged tardiness.  *Id.*  While this allegation raises an inference that similarly situated employees outside her protected class were treated differently, it is not sufficient alone to satisfy all the elements of a *prima facie* claim of disparate treatment under Title VII.  Specifically, Taylor fails to demonstrate that her job performance was satisfactory.  *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007); *see also* disparate treatment discussion *infra* at "I. Count I: Disparate Treatment."

It is uncontested that on May 1, 2009 a heated exchange occurred between Irving Jackson, the Supervisor of Distribution for the Millsboro District, and Taylor. Taylor Dep. at 181; Jackson Aff. ¶ 11, ECF No. 38-10. According to Jackson, he radioed Taylor to pull over after he allegedly saw her driving while talking on a cell phone during her ride back to the Salisbury facility. Jackson Aff. ¶ 11. Taylor claims that during this confrontation, Jackson told her she should not be driving and speaking on a cell phone without a hands-free device and accused her of skipping and miscoding meters. Taylor Dep. at 71-72, 168-69. According to Taylor, she denied Jackson's claims and told him she had her phone on speaker-phone. *Id.* Taylor also suggested that Jackson re-check the employee readings. *Id.* Jackson acknowledges that after reviewing the employee numbers in the report he had mistaken the wrong readings for Taylor's readings. *Id.* Jackson apologized to Taylor for the error. *Id.*

Taylor was very upset about the confrontation with Jackson and spoke to Brunner about it upon reaching the Salisbury facility. Taylor Dep. at 181. According to Taylor, Jackson's confrontation was demeaning and embarrassing. *Id.* at 184. Taylor asked Brunner to assign a different temporary Salisbury meter reader to the Millsboro District. *Id.* Brunner denied Taylor's request and told her that she would continue working in Millsboro because "all of [his] good meter readers" were to remain in Salisbury. *Id.* at 184-85. When Taylor asked Brunner to explain what he meant by his reference to "good meter readers," Brunner did not respond. *Id.* Taylor then stated to Brunner, "I feel as if you're sending me because – I feel because I'm black. And you're not sending anybody else. They're white." *Id.* Brunner allegedly did not directly respond to Taylor, but again reasserted to her that he was keeping his "good meter readers" in Salisbury. *Id.* at 186.

4

Displeased with Brunner's response, Taylor complained to her union representatives about the May 1st incident and her assignment to Millsboro.  Taylor Dep. at 189-93.  Taylor's union representatives told her that it was common for the most junior employee to receive the least favorable assignments.  Atkins Aff. at ¶ 8, ECF No. 38-11; Fidderman Aff. at ¶ 13, ECF No. 38-12.

In the weeks following the incident with Jackson, Taylor's attendance at work dropped. Taylor called in sick for four days in the week immediately following the incident.  *Id.* at 200-01. In the week after that, Taylor called in sick on two days.  *Id.* at 201-02.  In sum, Taylor was absent from work nine out of nineteen work days in the weeks following the incident.  *Id.* at 206. When Taylor returned to work on May 29, 2009, Brunner met with Taylor and informed her that her employment was terminated.  *Id.* at 206-07.

After filing a charge with the Equal Employment Opportunity Commission ("EEOC") her charge was rejected and the EEOC issued a Right to Sue Letter. Taylor then initiated this action by filing a Complaint and an Amended Complaint (ECF No. 13).  On March 7, 2011, this Court granted Pepco's Motion to Dismiss and dismissed all counts against it with prejudice.  The Plaintiff was then given the opportunity to conduct discovery and after the conclusion of the discovery process, the Defendant filed the pending Motion for Summary Judgment (ECF No. 38).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A

material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial.  *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW, 1*87 F. 3d 415, 422 (4th Cir. 1999)).  Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986).

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50.  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

A plaintiff may survive a motion for summary judgment filed by the defendant employer in one of two ways: "(1) by offering direct evidence of discrimination under the ordinary standards of proof, or (2) under the system of shifting evidentiary burdens established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Garrow v. Economos Props., Inc.*, 242 F. App'x. 68, 70 (4th Cir. 2007).

Because Taylor has not established any direct evidence of discriminatory intent, her claim is reviewed under the familiar three-step *McDonnell Douglas* burden-shifting model. To satisfy *McDonnell Douglas*, Taylor must first present enough evidence to prove a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43, (2000). If she can do this, the burden then shifts to Defendant to produce evidence that the adverse employment action was taken against Taylor "for a legitimate, nondiscriminatory reason." *Id.* at 142 (*citing Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If Defendant provides a reason, the burden shifts back to Taylor to show that Defendant's reason is pretextual. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998).

I.      **Count I: Disparate Treatment**

To establish a *prima facie* case of disparate treatment in violation of Title VII, Taylor must show that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside of his class received more favorable treatment. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). Taylor satisfies the first element because she is African-American and thus, a member of a protected class. Taylor also satisfies the third element because a termination constitutes an adverse action. *See Hartsell v. Duplex Products,*

*Inc.*, 123 F.3d 766, 775 (4th Cir. 1997) (noting that termination is an adverse employment action).   However, Taylor cannot establish a *prima facie* case of disparate treatment because she has not produced sufficient evidence to support the second or fourth elements.   In fact, the record reflects that her job performance was unsatisfactory.   Additionally, she failed to produce evidence that similarly situated employees outside of her protected class were treated differently.   *See Sterling v. Tenet*, 416 F.3d 338, 345 (4th Cir. 2005) (recognizing that, to establish *prima facie* case, a plaintiff must "raise an inference of discriminatory intent by showing that she was treated worse than similarly situated employees of other races").

Taylor does allege that she was the only one Brunner pulled aside for tardiness on April 20, 2009 when she arrived for the daily morning meeting at the same time as Jacob Wilkins, a white temporary meter reader.   Nevertheless, she fails to allege that Jacob Wilkins had a similar employee record.   Particularly, it appears that this was her second late arrival and that she was not pulled aside after the first one.   Burris Aff. at Ex.1, ECF No. 38-7; Pl.'s Opp. to Def.'s Mot. for Summ. J. at 9, ECF No. 39.   It is possible that this was Jacob Wilkins' first episode of tardiness.   Moreover, Taylor did not allege that any other employee outside her protected class with a similar work record was treated in a different manner.

She further alleges that her assignment to the Millsboro District is evidence of disparate treatment.   Yet, the three white Salisbury temporary meter readers that Taylor identifies as her similarly situated counterparts had been performing their meter reader job duties and responsibilities for over nine months.   Def. Ans. to Pl.'s Second Set of Interrog. No. 20, (ECF No. 38-15).   As Defendant aptly points out, Taylor had been employed by Delmarva as a meter reader for three weeks, had worked on the Salisbury meters for six days and had not worked the majority of the Salisbury routes, when the request was made from the Middleboro district.

Defendant's assertion that Taylor was assigned to the District in order to avoid disrupting the established schedule is sufficient.   Thus, Taylor has not sufficiently proven that race was a motivating factor for her assignment.

Similarly, Taylor has not produced any evidence that Delmarva provided similarly situated non-African American meter readers more extensive training than was provided to her when she began her position at Delmarva.   Since Taylor has not produced any convincing evidence that she was singled out or that similarly situated individuals were disciplined differently than she was, she cannot establish a *prima facie* case of disparate treatment under Title VII.

Even if Taylor had established a *prima facie* case of disparate treatment, as explained above, Taylor has offered no evidence to demonstrate that Defendant's legitimate, nondiscriminatory reasons for terminating her employment were a pretext for discrimination. Thus, even viewing the facts in the light most favorable to the plaintiff, Taylor has not presented evidence sufficient for a reasonable jury to conclude that Defendant's reason for terminating her was a pretext for discrimination.   Accordingly, Plaintiff Taylor's disparate treatment claim under Title VII fails as a matter of law and Defendant Delmarva is entitled to summary judgment as to Count I.

## II.        Count II: Retaliation

To establish a *prima facie* case of retaliation under Title VII, as alleged in Count II, Taylor must show that: (1) she engaged in a protected activity; (2) Delmarva took a "materially" adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse employment action.   *Cepada v. Bd. of Educ. of Baltimore Cnty.*, WDQ–10–0537, 2011 WL 1636405, at *9 (D. Md. Apr. 28, 2011) (*citing Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)).

In regard to the first element, protected activity may fall into two categories, opposition and participation. 42 U.S.C. § 2000e–3(a). The participation clause protects an employee from retaliation where he "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII. *Id.* Because at the time Plaintiff made her protestation she had not yet formally initiated a complaint or investigation against Defendant, her activity can only be considered protected under the opposition clause and not under the participation clause of § 2000e-(3)(a). The United States Court of Appeals for the Fourth Circuit has held that "protected oppositional activities may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complaints . . . about suspected violations.'" *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (quoting *Bryant v. Aiken Reg'l. Med. Ctrs.*, *Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003)).

Plaintiff satisfies the first element for protected activity under the opposition clause because she made a verbal complaint to her supervisor Brunner on May 1st alleging race discrimination. As mentioned above, Taylor also satisfies the second element because Defendant's termination of her employment constitutes a "materially" adverse action. However, in regard to the third element, Plaintiff has failed to demonstrate any connection between her alleged complaints and her termination. Rather, based on the record before the Court, it is apparent that Plaintiff was fired for her absenteeism and overall work record. As the Fourth Circuit has held, this court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination."

*DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). Since Taylor has not established a *prima facie* case of retaliation under Title VII, Plaintiff Taylor's retaliation claim under Title VII fails as a matter of law and Defendant Delmarva is entitled to summary judgment as to Count II.

Alternatively, assuming that Taylor had established a *prima facie* case of retaliation under Title VII, the burden would shift to Defendant to prove its reason for disciplining her was not discriminatory. In this case, Defendant has produced evidence that Taylor was terminated for a legitimate, nondiscriminatory reason, specifically that Taylor's employment was terminated because of her absenteeism, tardiness, and "counseling" session with her supervisors. Burris Dep. at 58-59, ECF No. 38-7.

Plaintiff argues that she was never told she was being fired for excessive absenteeism and that Brunner informed her that she was being terminated because of lack of work. Pl.'s A. Compl. ¶ 19. Even assuming that Brunner told Taylor she was being terminated due to lack of work, Brunner's misinforming her of the reason is not sufficient to raise an interference that Delmarva's articulated reason was false or pretextual. *See Price v. Thompson*, 380 F.3d 209, 215 (4th Cir. 2004) (noting that plaintiff's claim that an employer's inconsistent positions for not hiring a plaintiff are not sufficient evidence of pretext). Given the undisputed facts, Delmarva has established a legitimate, nondiscriminatory reason for terminating Taylor's employment, thus the burden shifts back to Taylor to show that Delmarva's reason is a pretext for discrimination.

Aside from her own speculation, Taylor has presented no evidence that would "cast doubt on the veracity" of Defendant's proffered explanation for her termination. *See Rowe v. Marley Co.*, 233 F.3d 825, 831 (4th Cir. 2000). Taylor argues race is Defendant's motivating factor for terminating her employment because at the time of her termination Defendant purported to

terminate her employment for lack of work. However, Taylor's own belief that her performance was satisfactory is not relevant to this Court's inquiry because in evaluating performance, "[i]t is the perception of the decision maker which is relevant. *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980). Taylor must provide evidence from which a reasonable jury could infer that Defendant's reason to terminate her employment was based on race. *McDonnell Douglas Corp.*, 411 U.S. 792, 804 (1973). Thus, even viewing the facts in the light most favorable to the plaintiff, Defendant has produced a legitimate, nondiscriminatory reason for terminating Taylor's employment, and Taylor has not presented sufficient evidence for a reasonable jury to conclude that Defendant's reason for terminating her was a pretext for discrimination. Accordingly, Plaintiff Taylor's retaliation claim under Title VII fails as a matter of law, and Defendant is entitled to summary judgment as to Counts I and II.

CONCLUSION

For the reasons stated above, Defendant Delmarva Power & Light Company, Inc.'s Motion for Summary Judgment (ECF No. 38) is GRANTED.

A separate Order follows.


Dated:        March 21, 2012                  /s/_____
                                              Richard D. Bennett
                                              United States District Judge